UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | No. 3: 17-cr-136 |
| V. | : | |
| **STEPHEN MAZZO** | : | |
| Defendant. | : | June 22, 2020 |

**RULING AND ORDER**
**DENYING DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE  [DKT. 103]**

Before the Court is Defendant Stephen Mazzo's Motion for Compassionate Release. [Dkt. 103]. Mr. Mazzo, incarcerated at FCI McKean with a projected release date of May 2021, seeks compassionate release based on his risk of complications should he contract COVID-19.  The Government "does not take a position" with respect to this motion. [Dkt. 105]. For the reasons set forth below, the Court denies Mr. Mazzo's motion.

I. **Procedural and Factual Background**
    A. *Case Background*

Mr. Mazzo was indicted in the instant case on June 14, 2017.  [Dkt. 1]. On June 20, 2017, Magistrate Judge Garfinkel granted him pre-trial release. [Dkt. 25]. On February 15, 2018, Mr. Mazzo pleaded guilty to possessing 500 grams of cocaine with the intent to distribute it, in violation of  21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)). [Dkt. 64]. His guidelines range was enhanced because he unlawfully possessed firearms, a semi-automatic pistol and a rifle. [Dkt. 84 (Pre-Sentence Report) at ¶26]. On May 24, 2018, the Court sentenced Mr. Mazzo to forty-one months in the custody

of the Bureau of Prisons, followed by three years of Supervised Release. [Dkt. 94]. Mr. Mazzo appealed his sentence in May 2018, and his appeal remains pending. [Dkt. 96]; see United States v. Mazzo, No. 18-1599.

On March 26, 2020, Mr. Mazzo (through counsel) filed a request to the Warden of MCI McKean for immediate release, and, on April 6, 2020, his request was denied on the basis that his medical condition was stable. [Dkt. 103-1 at Ex. 8 (Warden Denial of Motion for Compassionate Release)].

On May 6, 2020 Mr. Mazzo moved for compassionate release, and on May 15, the Court found, pursuant to Federal Rule of Criminal Procedure 37 and Federal Rule of Appellate Procedure 12.1

> that the motion raises a substantial issue in in light of Mr. Mazzo's moderate asthma and his corresponding vulnerability to COVID-19, [Dkt. 104 (Medical Records) at 4]; his steps toward rehabilitation while in prison, [Dkt. 103-1 at Exs. 3-4]; and his maintained community ties, [Dkt. 103-1 at Exs. 6-7].

[Dkt. 106]. Mr. Mazzo moved to remand his appeal pursuant to Federal Rule of Appellate Procedure 12.1 so that this Court could rule on his motion for compassionate release, and on June 15, 2020, the Second Circuit granted a limited remand for that purpose. [Dkt. 108]. Now having jurisdiction over his motion, the Court analyzes whether Mr. Mazzo's conditions of confinement and medical condition warrant the relief sought.

Mr. Mazzo is currently housed at FCI McKean, though he is scheduled to move to a new unidentified facility shortly. [Dkt. 107]. He has been detained for close to 24 months, and his estimated release date is in 11 months, on May 15,

2021. *See Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (listing release date).

### B. Mr. Mazzo's Health

Mr. Mazzo suffers from asthma serious enough that he requires the use of multiple inhalers. [Dkt. 104 (Medical Records) at 4]. In his pre-sentence investigation interview, he reported that "he is not prescribed medication." [Dkt. 84 (Apr. 18, 2018 Pre-sentence Investigation Report) ¶51]. Despite this denial, during a later health care visit, he informed his doctor that "prior to coming to the BOP, he was using [the asthma medication] Symbicort with good control of his symptoms." [Dkt. 104 at 2]. In any case, his asthma diagnosis was confirmed soon after his incarceration. *Id.* at 45 (asthma diagnosed on 6/21/2018). A February 2020 medical report notes, "The patient's moderate persistent asthma is not currently well controlled. Would recommend adding a LABA. Will change patient to a care level 2." *Id.* at 4 (also noting peak flow readings at 310, 410 and 510). A subsequent report notes that, with the re-addition of the second inhaler, Mr. Mazzo's use of a rescue inhaler decreased but he still needed to use it several times per week. *Id.* at 1 (noting "[h]e was recently started on Symbicort and reports improvement in his symptoms").

### II.   Legal Standard

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of

2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.*

### III. Analysis

#### A. *The Court's Authority to Modify the Judgment*

Mr. Mazzo submitted his request to his warden on March 26, 2020. [Dkt. 103-1 at Ex. 8]. 30 days have passed, triggering the Court's authority to rule. 18 U.S.C. § 3582(c)(1)(A).

#### B. *"Extraordinary and Compelling Reason"*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See*

**U.S.S.G. 1B1.1 (Nov. 1, 2018).** The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> (A) Medical Condition of the Defendant.--
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> [or]
>
> (ii) The defendant is--
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A). Any "other" "extraordinary and compelling reason" may also justify relief. *Id.* at Commentary Application Note 1(D).

The Court finds that Mr. Mazzo has not provided "extraordinary and compelling reasons" to grant his immediate compassionate release pursuant to 18 U.S.C. § 3582(C)(1). The CDC states that "people with moderate to severe asthma <u>may</u> be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease." *At Risk for Severe Illness from COVID-19*, Centers for Disease Control and Prevention: Coronavirus Disease 2019

(COVID-19) (Apr. 2, 2020) (emphasis added)).[1] Mr. Mazzo has moderate asthma, and on the basis of his corresponding vulnerability to COVID-19, the Court found that his motion for reduction of sentence raised a substantial issue. [Dkt. 106].

But Mr. Mazzo's "medical records show that the Bureau of Prisons is managing his conditions, which weighs against finding extraordinary and compelling circumstances." *United States v. Foozailov*, No. 17 CR. 262 (LGS), 2020 WL 3268688, at *2 (S.D.N.Y. June 17, 2020) (denying motion for compassionate release where 57-year-old defendant sentenced to 66 months for mail fraud had asthma, hypertension, and morbid obesity). Further, Mr. Mazzo does not have other risk factors: he is under 40 and he does not have other high-risk medical conditions. *See United States v. Belle*, No. 3:18-CR-117-(VAB)-1, 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (denying motion for compassionate release by 26 year old man with asthma who only used albuterol inhaler and who had stated to medical personnel that he hadn't had an asthma exacerbation in years).

Finally, it appears that the Bureau of Prisons is taking measures that are working at Mr. Mazzo's facility, FCI McKean, and more widely. The Government has provided information on the facility's screening protocols and operations

---

[1] Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.
Since Mr. Mazzo has submitted his motion, an early study has found that, after adjusting for age, sex, body mass index, and other factors, asthma increases an individual risk of being hospitalized due to CVOID-19 by up to 48%. *See* Zhaozhong Zhu et al., Association of asthma and its genetic predisposition with the risk of severe COVID-19, *Journal of Allergy and Clinical Immunology* (2020), doi: https://doi.org/10.1016/j.jaci.2020.06.001.

modifications, which are being implemented throughout the prison system. *See Covid-19 Coronavirus*, Bureau of Prisons (June 18, 2020), https://www.bop.gov/coronavirus.

As of the date of this order, no inmates have tested positive for COVID-19 at FIC McKean, and the number of COVID-19 positive inmates throughout the Bureau of Prisons has been dropping steadily. These conditions also weigh against finding an exceptional and compelling reason for release. *Cf. United States v. Norris*, No. 3:18-CR-243-SRU, ECF No. 37 (D. Conn. Apr. 16, 2020) (Underhill, C.J.) ("[Defendant] suffers from asthma and uses an Albuterol inhaler to treat his symptoms. . . . [H]is medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence.").

B. 18 U.S. § 3553(a) factors

Next, granting Mr. Mazzo's request for compassionate release is not consistent with the 3553(a) sentencing factors. The factors have not changed. The Court sentenced Mr. Mazzo at the bottom of the guideline range. Reducing the sentence further would not accomplish the "need for the sentence imposed" "to reflect the seriousness of the offense," "protect the public" and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

The Court previously cited Mr. Mazzo's steps toward rehabilitation while in prison and his maintained community ties. [Dkt. 103-1 at Exs. 3-4 and 6-7]. Mr. Mazzo has actively participated in programming to make a successful return to the community. [Dkt. 103-1 at Ex. 3]. He has completed the 500-hour intensive

**Residential Drug Abuse Program, even though he did not expect a sentence reduction.** *Id.* **Prior to his incarceration he had been abstinent. At the time of the presentence interview he reported he last used on August 13, 2017. [Dkt. 84 ¶ 53]. He reported he maintained his sobriety through intensive drug treatment, self-help meetings and counseling. [Dkt. 84 ¶ 54]. While in custody, he completed a parenting course. [Dkt. 103-1 at Ex. 3]. He helped the RDAP program relocate.** *Id.* **at Ex. 4. He maintains a committed marital relationship.** *Id.* **at Ex. 6. He has work available to him in the community.** *Id.* **at Ex. 7. Aside from a single relapse, Mr. Mazzo was fully compliant with the terms of his pretrial release. [Dkt. 84 ¶6].**

**Juxtaposed against these accomplishments is Mr. Mazzo's history and characteristics. He is a middle-class family man who nonetheless is serving a sentence for his third drug conviction.** *Id.* **at ¶¶ 37, 38, 50. He committed his first offense at age 21.** *Id.* **At ¶ 37. He committed his second drug offense after receiving a lenient noncustodial sentence while on supervision for his first drug offense.** *Id.* **at ¶¶ 37, 38. He committed the instant offense after serving a 2-year sentence for sale of narcotics.** *Id.* **at ¶ 38. His family ties, the gravity of his prior convictions and previous 2-year term of incarceration did not deter him from persisting in drug distribution.**

**The Court commends Mr. Mazzo for his accomplishments but finds that release would nonetheless "provide an undue windfall that would severely undermine the goals of the sentence this Court imposed."** *United States v. Brady*, **No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at \*3 (S.D.N.Y. May 15, 2020).**

    **C. <u>Policy Statement: Danger to Others or the Community</u>**

Finally, the Court also remains concerned that Mr. Mazzo is a danger to the community. The Commission's policy statement provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).  As noted above, Mr. Mazzo's criminal history includes two previous state drug convictions. [Dkt. 84 ¶¶37-38]. The Pre-Sentence Investigation Report indicates the instant offense was not a one-off transaction, but instead part of a continuing course of illegal conduct:

> In May 2017, a confidential source… admitted to purchasing cocaine from Stephen Mazzo on multiple occasions. The [confidential source] provided investigators with Mazzo's physical description, contact telephone number, and other identifiers. On that basis, investigators began surveilling Mr. Mazzo.

*Id.* at ¶6.  As a result of the surveillance, Mr. Mazzo was arrested in possession of a bulk redistribution quantity of cocaine weighing 533.9 grams. *Id.* at ¶10.

Further, three firearms were retrieved from Mr. Mazzo's residence following his arrest. *Id.* ¶¶ 7-13. Stored in the same location as the drug packaging material found in Mr. Mazzo's garage was a box of shotgun ammunition. *Cf. United States v. Beck*, No. 1:13-CR-186-6, -- F. Supp. 3d. -- , 2019 WL 2716505, at *10 (M.D.N.C. June 28, 2019) ("While she and her husband kept firearms in their home in connection with their drug business… there was no evidence or indication that she ever used or pointed a gun at anyone or that she threatened anyone with a firearm.").  The guns were unsecured in a closet and in the basement, rather than stored in a gun safe, in a home Mr. Mazzo shared with his wife and children. [Dkt. 84 ¶ 13].

## IV.     Conclusion and Orders

For the reasons above, the Court denies Mr. Mazzo's motion for compassionate release.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant
United States District Judge**

Dated this day in Hartford, Connecticut: June 22, 2020